UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAYRELI MARTINEZ, on behalf of herself and all others similarly situated, and on behalf of the general public, <br><br> Plaintiff, <br><br> v. <br><br> VISION PRECISION HOLDINGS, LLC; et al., <br><br> Defendants. | No. 1:19-cv-01002-DAD-JLT <br><br> ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION <br><br> (Doc. No. 5) |

This matter is before the court on defendant Vision Precision Holdings, LLC's ("VPH") motion to compel arbitration. A hearing on the motion was held on October 16, 2019. Attorney Gwendolyne Ousdahl appeared telephonically on behalf of plaintiff Mayreli Martinez. Attorney Brian Morris appeared telephonically on behalf of defendant. Based on the arguments presented by counsel, and for the reasons set forth below, the court will grant defendant's motion to compel arbitration.

## BACKGROUND

Plaintiff was a non-exempt, hourly worker employed by defendant as a patient coordinator and sales assistant at one of its retail locations in California. (Doc. No. 1-3, Ex. A ("Compl.") at ¶ 28.) Defendant owns and operates optical retail stores in California. (*Id.* at ¶¶ 37–38.)

Plaintiff originally filed this suit as a class action on May 17, 2019 in the Kern County Superior Court, alleging violations of California's Labor Code and Unfair Competition Law ("UCL"). (*Id.* at ¶¶ 69–137.) According to the complaint, defendant failed to: (1) pay straight time wages; (2) pay overtime wages; (3) provide meal periods; (4) provide rest periods; (5) provide compliant itemized wage statements; (6) pay wages due at termination; and (7) comply with the UCL. (*Id.*)

Defendant removed the action to this federal court on July 22, 2019 on the basis of the Class Action Fairness Act. (Doc. No. 1 at 2.) On August 14, 2019, defendant moved to compel arbitration, relying on an arbitration agreement (the "Agreement") that plaintiff signed on August 6, 2018. (Doc. No. 5.) The Agreement provides, in part, that:

> As a condition of [plaintiff's] employment . . . [plaintiff] and [defendant] agree that certain claims arising out of or relating to [plaintiff's] employment relationship with [defendant] . . . or the termination of that relationship . . . must be submitted for resolution by final binding confidential arbitration . . ..

(Doc. No. 5-2 at 6.)

Plaintiff filed her opposition to the pending motion on October 2, 2019, arguing that the Agreement is unenforceable due to its procedural and substantive unconscionability. (Doc. No. 8 at 8.) Defendant filed its reply on October 9, 2019. (Doc. No. 9.)

## LEGAL STANDARDS

A written provision in any contract evidencing a transaction involving commerce to settle a dispute by arbitration is subject to the Federal Arbitration Act ("FAA"). 9 U.S.C. § 2. The FAA confers on the parties involved the right to obtain an order directing that arbitration proceed in the manner provided for in a contract between them. 9 U.S.C. § 4. In deciding a motion to compel arbitration, the court "is limited to determining (1) whether a valid agreement to arbitrate exists [within the contract] and, if it does, (2) whether the agreement encompasses the dispute at issue." *Boardman v. Pacific Seafood Group*, 822 F.3d 1011, 1017 (9th Cir. 2016) (citing *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (brackets in original)).

Because there is an "emphatic federal policy in favor of arbitral dispute resolution," *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth*, 473 U.S. 614, 631 (1985), "'any doubts

concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.'" *Id.* at 626 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24–25 (1983)). Because "waiver of the right to arbitration is disfavored, 'any party arguing waiver of arbitration bears a heavy burden of proof.'" *Martin v. Yasuda*, 829 F.3d 1118, 1124 (9th Cir. 2016) (quoting *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986)).

In contrast, an arbitration agreement may "be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' though not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). In deciding whether parties have agreed to arbitrate, courts "apply ordinary state law contract principles that govern the formation of contracts to decide whether an agreement to arbitrate exists." *Norcia v. Samsung Telecomm. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017), *cert. denied*, ___U.S.___, 138 S. Ct. 203 (2017) (citation and internal quotation marks omitted). However, courts may not apply traditional contractual defenses, like duress and unconscionability, in a broader or more stringent manner to invalidate arbitration agreements and thereby undermine FAA's purpose to "ensur[e] that private arbitration agreements are enforced according to their terms." *Concepcion*, 563 U.S. at 344 (quoting *Volt Info. Scis., Inc. v. Bd. of Trs.*, 489 U.S. 468, 478 (1989)).

**LEGAL ANALYSIS**

Here, defendant contends that the court must compel arbitration because plaintiff agreed in a binding and enforceable arbitration agreement to individually arbitrate her claims and waive her right to bring a class claim. (Doc. No. 5-1 at 2.) Plaintiff argues that the Agreement is unenforceable because it is both procedurally and substantively unconscionable. (Doc. No. 8 at 8–9.)

/////

/////

**A.      Whether the Parties Entered into an Agreement**

The court first looks at whether a valid arbitration agreement exists and if it covers the dispute at issue.  *See Boardman*, 822 F.3d at 1017.

Under California law, the "party seeking arbitration bears the burden of proving the existence of an arbitration agreement[.]"  *Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012); *see also Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014) (the burden of proving the existence of an arbitration agreement is "by a preponderance of the evidence").  In determining whether an agreement to arbitrate exists, "[t]he trial court sits as the trier of fact, weighing all the affidavits, declarations, and other documentary evidence, and any oral testimony the court may receive at its discretion, to reach a final determination."  *Ruiz v. Moss Bros. Auto Grp., Inc.*, 232 Cal. App. 4th 836, 842 (2014) (citing *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 972 (1997), *as modified* (July 30, 1997)).  "Where the existence of a contract is at issue and the evidence is conflicting or admits of more than one inference, it is for the trier of fact to determine whether the contract actually existed."  *San Joaquin Gen. Hosp. v. United Healthcare Ins.*, No. 2:16-cv-01904-KJM-EFB, 2017 WL 1093835, at *2 (E.D. Cal. Mar. 23, 2017) (citing *Bustamante v. Intuit, Inc.*, 141 Cal. App. 4th 199, 208 (2006)).

Here, defendant contends that plaintiff entered into a "FAA-covered arbitration agreement" on August 6, 2018 by electronically signing the Agreement and accepting and continuing her employment with defendant after receipt of the Agreement.[1]  (Doc. No. 5-1 at 3, 6–7.)  Defendant also asserts that the Agreement applies to "all claims" brought by plaintiff.  (*Id.* at 3.)  By its terms, the Agreement covers "any claim that could be asserted in court," including

---

[1]  The Agreement states that binding arbitration is "a condition of [plaintiff's] employment" by defendant.  (Doc. No. 5-2, Ex. A at 5); *see Diaz v. Sohnen Enters.*, 34 Cal. App. 5th 126, 130 (2019) ("California law in this area is settled: When an employee continues his or her employment after notification that an agreement to arbitration is a condition of continued employment, that employee has impliedly consented to the arbitration agreement.") (collecting cases).

claims for wages, breach of contract, discrimination, and harassment.[2]  (Doc. No. 5-2, Ex. A at 6.)

Plaintiff acknowledges that she signed the Agreement and does not dispute that it covers the claims brought in this case.  (Doc. No. 8-1 ("Martinez Decl.") at ¶ 7.)  Based on the record before the court, the undersigned concludes that an arbitration agreement does exist between the parties and that it covers the claims at issue in this case.

**B.      Whether the Agreement is Valid**

In opposition to the motion to compel arbitration, plaintiff argues that the Agreement is procedurally and substantively unconscionable.  (Doc. No. 8 at 9.)

The FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  This provision, known as the "savings clause," "permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue."  *Concepcion*, 563 U.S. at 339 (quoting *Doctor's Assocs.*, 517 U.S. at 687).  "[T]he party opposing arbitration bears the burden of proving any defense, such as unconscionability."  *Pinnacle Museum Tower Assn*, 55 Cal. 4th at 236.  "Any doubts about the scope of arbitrable issues, including applicable contract defenses, are to be resolved in favor of arbitration."  *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1259 (9th Cir. 2017).

To establish unconscionability under California law, the party opposing arbitration must demonstrate that the entire contract, or a specific clause in it, is both procedurally and substantively unconscionable.  *Id.* at 1260 (citing *Sanchez v. Valencia Holding Co.*, 61 Cal. 4th 899, 910 (2015)).  "The prevailing view is that procedural and substantive unconscionability must both be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability . . . [b]ut they need not be present in the same degree."  *Sanchez*, 61 Cal. 4th at 910.  Courts generally view procedural and substantive

---

[2]  There are some exceptions to what the Agreement covers, which will be examined below.  (*See* Doc. No. 5-2, Ex. A.)

unconscionability on a sliding scale, whereby "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000). Overall, "unconscionability requires a substantial degree of unfairness beyond a simple old-fashioned bad bargain," such as when a contract is "so one-sided as to 'shock the conscience.'" *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1210 (9th Cir. 2016) (quoting *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1245 (2016)).

### 1. Whether the Agreement is Procedurally Unconscionable

Plaintiff argues that the Agreement is procedurally unconscionable because: (1) the Agreement is a contract of adhesion; (2) defendant employed oppressive methods to obtain plaintiff's assent to the Agreement; and (3) defendant surprised plaintiff with the terms in the Agreement. (Doc. No. 8 at 8–9.)

"The procedural element of unconscionability focuses on 'oppression or surprise due to unequal bargaining power.'" *Poublon*, 846 F.3d at 1260 (quoting *Pinnacle Museum Tower Ass'n*, 55 Cal. 4th at 246); *see also Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 922 (9th Cir. 2013) ("Procedural unconscionability concerns the manner in which the contract was negotiated and the respective circumstances of the parties at that time, focusing on the level of oppression and surprise involved in the agreement."). "Oppression addresses the weaker party's absence of choice and unequal bargaining power that results in no real negotiation," while "[s]urprise involves the extent to which the contract clearly discloses its terms as well as the reasonable expectations of the weaker party." *Chavarria*, 733 F.3d at 922 (internal quotation marks and citation omitted).

#### a. *Contract of Adhesion*

"Unconscionability analysis begins with an inquiry into whether the contract is one of adhesion." *Armendariz*, 24 Cal. 4th at 113. The California Supreme Court has held that the "term [contract of adhesion] signifies a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Id.* at 113 (citation omitted). Courts have since recognized

that such contracts are "procedurally unconscionable under California law[.]" *Chavarria*, 733

F.3d at 923 (citing *Ting v. AT&T*, 319 F.3d 1126, 1148 (9th Cir. 2003)); *see also Sanchez*, 61 Cal.

4th at 915 ("[T]he adhesive nature of the contract is sufficient to establish some degree of

procedural unconscionability.").

> Plaintiff argues that the Agreement is a contract of adhesion:

>> Defendant unilaterally drafted the Arbitration Agreement and presented it to Plaintiff on a take-it-or-leave-it basis. The Arbitration Procedure is mandatory for all employees. The Arbitration Agreement itself states that the Arbitration Procedure is a condition of employment. (*See* Doc. No. 5-2, Ex. 1, ¶ 1.) Plaintiff was presented with the Arbitration Agreement upon an offer of employment and was instructed to sign the agreement before her first day of work. Martinez Decl. ¶ 3–5. Plaintiff understood that she had to sign the Agreement before she would be permitted to work her first shift. Martinez Decl. ¶ 7–8. Plaintiff was not given the opportunity to discuss or change any of the provisions in the Arbitration Agreement. Martinez Decl. ¶ 6.

(Doc. No. 8 at 8–9, 15.)

> Based on these allegations advanced by plaintiff, the court concludes that the Agreement

is at least somewhat adhesive.[3] *See Armendariz*, 24 Cal. 4th at 115 (finding that an arbitration

agreement was adhesive because it "was imposed on employees as a condition of employment

and there was no opportunity to negotiate"); *Baltazar*, 62 Cal. 4th at 1245 ("The adhesive nature

of the employment contract requires us to be "particularly attuned" to [an employee's] claim of

unconscionability[.]" (quoting *Armendariz*, 24 Cal. 4th at 115)). But "the adhesive nature of a

contract, without more, would give rise to a low degree of procedural unconscionability at

---

[3] The court acknowledges that plaintiff's declaration is not particularly illustrative with regards to the adhesive nature of the Agreement. The declaration only suggests that she was under the impression that the Agreement was presented on a "take it or leave it basis"—it does not actually state that she actively attempted to negotiate or change it. (*See* Doc. No. 8 at 15; Martinez Decl. at ¶¶ 3–8.) Nevertheless, the declaration is sufficient to demonstrate a minimal degree of procedural unconscionability. *See, e.g.*, *Orihuela-Knott v. Salvation Army*, No. 2:18-cv-01060-KJM-DB, 2018 WL 6817844, at *2 (E.D. Cal. Aug. 21, 2018) (noting that, although "there is no *per se* rule" that contracts of adhesion are procedurally unconscionable, and plaintiffs' declarations were the "only evidence of oppression," it was enough to establish a low degree of procedural unconscionability); *but see Haugh v. Barrett Bus. Servs., Inc.*, No. 16-cv-02121-VC, 2017 WL 945113, at *1 (E.D. Cal. Mar. 1, 2017) ("It is not clear that the contract was truly adhesive. . . . [plaintiff] believed that the contract terms were not negotiable, but he presents no evidence or arguments for the inability to negotiate apart from his own personal understanding.").

most." *Poublon*, 846 F.3d at 1261–62; *see also Gutierrez v. FriendFinder Networks Inc.*, No. 18-cv-05918-BLF, 2019 WL 1974900, at *10 (N.D. Cal. May 3, 2019) (collecting cases).

The court therefore finds that the Agreement's adhesive nature demonstrates only a minor degree of procedural unconscionability.

### b. *Oppression*

Plaintiff contends that the Agreement is oppressive because: 1) plaintiff was not given enough time to consider the proposed contract; 2) plaintiff was forced to accept the Agreement as a condition of employment; 3) the Agreement is long and complex; 4) plaintiff is a layperson; and 5) plaintiff was not able to review the Agreement with an attorney. (Doc. No. 8 at 16–18.)

Under California law, "[o]ppression occurs where a contract involves lack of negotiation and meaningful choice[.]" *OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 126 (2019) (internal quotation marks and citations omitted).

> The circumstances relevant to establishing oppression include, but are not limited to (1) the amount of time the party is given to consider the proposed contract; (2) the amount and type of pressure exerted on the party to sign the proposed contract; (3) the length of the proposed contract and the length and complexity of the challenged provision; (4) the education and experience of the party; and (5) whether the party's review of the proposed contract was aided by an attorney.

*Id.* at 126–27 (internal quotation marks and citations omitted).

### i. Time to Consider the Agreement

Plaintiff argues that she was not provided sufficient time to properly consider the Agreement because she was only given three days to review the Agreement alongside an employee handbook and fifty other pages of new hire paperwork. (Doc. No. 8 at 16.)

Three days—two of which were over the weekend—to review a reasonable amount of paperwork is not indicative of oppression. In other cases where courts found oppression, employers pressured their employees to sign arbitration agreements without giving them time to review the agreements. *See, e.g.*, *OTO*, 8 Cal. 5th at 127 (finding unconscionability in part because the employee was expected to immediately sign an arbitration agreement without the opportunity to consult with counsel and would have lost wages if he spent time spent reviewing

8

the agreement); *Calzadillas v. Wonderful Co., LLC*, No. 1:19-cv-00172-DAD-JLT, 2019 WL 2339783, at *9 (E.D. Cal. June 3, 2019) (finding unconscionability because the employees were on the clock and pressured "just to sign [the arbitration agreement] because there was no time to read [it]"). Such is not the case here. In addition, it appears plaintiff made no effort to request more time to review the Agreement or assistance in understanding its terms.

Therefore, the court finds no oppression with respect to the time that plaintiff was given to consider the Agreement.

ii.     Condition of Employment

As noted earlier, the Agreement was offered to plaintiff as a condition of employment, in that she was instructed to sign it and return it by her first day of work. (*See* Doc. No. 8 at 15; Martinez Decl. at ¶¶ 3–8.) The Agreement itself also specifically states that consent to the Agreement is a condition of employment. (Doc. No. 5-2, Ex. A at § 1.)

"It is well settled that adhesion contracts in the employment context, that is, those contracts offered to employees on a take-it-or-leave-it basis, typically contain some aspects of procedural unconscionability." *Serpa v. California Sur. Investigations, Inc.*, 215 Cal. App. 4th 695, 704 (2013), *as modified* (Apr. 19, 2013), *as modified* (Apr. 26, 2013); *see also OTO*, 8 Cal. 5th at 126 ("Arbitration contracts imposed as a condition of employment are typically adhesive."); *Chavarria*, 733 F.3d at 922–23 (holding that arbitration agreements are procedurally unconscionable when imposed on employees on a take-it-or-leave-it basis).

Although the court finds that making the arbitration provision a condition of employment tips the balance towards adhesion, this "aspect of an agreement is not dispositive." *Serpa*, 215 Cal. App. 4th at 704; *OTO*, 8 Cal. 5th at 126 (noting that adhesion is only one part of procedural unconscionability inquiry, and that "[t]he pertinent question, then, is whether circumstances of the contract's formation created such oppression or surprise that closer scrutiny of its overall fairness is required").

/////

/////

/////

iii.      Length and Complexity

Plaintiff contends that the Agreement is so long and complex that it is oppressive, noting that it is four pages long, printed in 10-point font, divided into seven sections, and filled with "statutory references and legal jargon." (Doc. No. 8 at 17.)

However, the court cannot characterize a three-and-a-half-page document with 10-point font, clearly delineated headings, relatively short sections, and regularly-sized margins and spacing as unconscionably long or complex. *Cf. OTO*, 8 Cal. 5th at 119, 128, n.4 (finding an arbitration provision unconscionable in part because it was a "visually impenetrable" "paragon of prolixity" that "challenge[d] the limits of legibility" due to "extremely small [either 7 or 8.5] font" compacted into a "single dense paragraph" with sentences up to "12 lines long").

And although the Agreement does incorporate some legal jargon, as one would expect from a legal document, the section with statutory references is confined to four lines of text and is reasonably understood in context to refer to various anti-discrimination laws.[4] *Cf. OTO*, 8 Cal. 5th at 128 (finding an arbitration provision unconscionable in part because it was "filled with statutory references," including to "*unspecified* 'local, state or federal laws or regulations'") (emphasis added).

The court thus finds minimal to no oppression with regards to the length and complexity of the Agreement.

iv.      Plaintiff's Ability to Understand the Agreement

According to plaintiff, she is not an attorney, did not attend law school, and is not familiar with the legalities contained in the Agreement. (Doc. No. 8 at 17–18.) Plaintiff represents that she also did not "have the ability to review the Arbitration Agreement with the aid of an

---

[4] The statutory references that plaintiff alludes to are:

> Title VII of the Civil Rights Act, as amended; the California Fair Employment & Housing Act; the Age Discrimination in Employment Act, as amended; the Americans with Disabilities Act, 42 U.S.C. section 1981; the Employment Retirement Income Security Act; the California Labor Code; or otherwise.

(Doc. No. 5-2, Ex. A at 6.) The Agreement provides that claims brought pursuant to the above statutes are subject to arbitration.

10

attorney." (*Id.* at 18.)

Plaintiff, however, does not explain why she was unable to secure an attorney and made no effort to ask defendant for more time or assistance in reviewing the Agreement. Although her purported inability to adequately review the Agreement may be an indication of oppression, the fact that plaintiff may not have navigated the Agreement with the skill of a more sophisticated party does not render it "highly oppressive." (Doc. No. 8 at 18); c*f. Haugh*, 2017 WL 945113, at *1 ("[Plaintiff's] failure to understand the arbitration provision does not invalidate it." (citing *Madden v. Kaiser Found. Hosps.*, 17 Cal. 3d 699, 710 (1976)).

c. *Surprise*

Plaintiff argues that the Agreement is procedurally unconscionable due to surprise because defendant: 1) failed to provide plaintiff with a copy of the American Arbitration Association Rules for the Resolution of Employment Disputes ("AAA Rules") referenced in the Agreement; 2) used complex statutory references and legal jargon in the Agreement;[5] and 3) included the Agreement with other new hire documents.

Under California law, "[s]urprise involves the extent to which the contract clearly discloses its terms as well as the reasonable expectations of the weaker party." *Chavarria*, 733 F.3d at 922 (internal quotation marks and citation omitted). This can occur when an "allegedly unconscionable provision is hidden within a prolix printed form." *OTO*, 8 Cal. 5th at 126 (citation omitted).

i. Failure to Provide Plaintiff with a Copy of the AAA Rules

Plaintiff relies on several authorities to support the proposition that defendant's failure to provide her with the AAA Rules referenced in the Agreement is procedurally unconscionable. *See, e.g.*, *Grabowski v. Robinson*, 817 F. Supp. 2d 1159, 1172 (S.D. Cal. 2011) (failure to provide plaintiff with the arbitration procedures referenced in the arbitration agreement "adds an element of surprise, and therefore procedural unconscionability"); *Harper v. Ultimo*, 113 Cal. App. 4th 1402, 1406–07 (2003) (finding procedural unconscionability because defendant failed to attach a

---

[5] In § B(1)(b)(iii) of this order the court analyzes this issue.

copy of the relevant arbitration rules to the agreement); *see also CarMax Auto Superstores California LLC v. Hernandez*, 94 F. Supp. 3d 1078, 1113 (C.D. Cal. 2015) (collecting cases without deciding the issue).

But many courts have held the opposite. *See, e.g.*, *Lane v. Francis Capital Mgmt. LLC*, 224 Cal. App. 4th 676, 691–92 (2014) ('[T]he failure to attach a copy of the AAA rules did not render the agreement procedurally unconscionable. There could be no surprise, as the arbitration rules referenced in the agreement were easily accessible to the parties—the AAA rules are available on the Internet."); *Stover-Davis v. Aetna Life Ins. Co.*, No. 1:15-cv-1938-BAM, 2016 WL 2756848, at *7 (E.D. Cal. May 12, 2016) (collecting cases).

More importantly, plaintiff's unconscionability defense in this case does not even rely on the substantive terms of the AAA Rules. The California Supreme Court's decision in *Baltazar* and the Ninth Circuit's ruling in *Poublon* are instructive. In *Baltazar*, an employee challenged the procedural unconscionability of an arbitration agreement based on her employer's failure to provide her with a copy of the relevant arbitration rules. 62 Cal. 4th at 1246. However, the California Supreme Court rejected the employee's argument because "her challenge to the enforcement of the agreement has nothing to do with the AAA rules; her challenge concerns only matters that were clearly delineated in the agreement she signed." *Id.* The court noted that her argument might have had "force if her conscionability challenge concerned some element of the AAA rules of which she had been unaware when she signed the arbitration agreement." (*Id.*)

The Ninth Circuit in *Poublon* concurred in a similar case, adding, "While 'courts will more closely scrutinize the substantive unconscionability of terms that were "artfully hidden" by the simple expedient of incorporating them by reference rather than including them in or attaching them to the arbitration agreement,' incorporation by reference, without more, does not affect the finding of procedural unconscionability." *Poublon*, 846 F.3d at 1262.

Following the reasoning set forth in *Baltazar* and *Poublon*, this court concludes that defendant's failure to provide plaintiff with a copy of the AAA Rules is not an instance of oppression.

/////

12

ii.     Inclusion of the Agreement with Other Paperwork

Plaintiff argues that she was surprised by the inclusion of the Agreement alongside fifty or so pages of other new hire paperwork. (Doc. No. 8 at 19–20.) This claim is belied by plaintiff's own actions—three days after receiving the Agreement, she returned it without asking any questions or expressing any concerns about it. Indeed, the practice of asking a new employee to review a packet of new hire paperwork is essentially an everyday occurrence, and there is nothing about plaintiff's experience, as she describes it, that would qualify as "surprise." *Cf. Poublon*, 846 F.3d at 1261, n.2 (noting "surprise or other sharp practices" might include being deceived about "an unusual provision" or "otherwise manipulated into signing the arbitration agreement").

Therefore, the court concludes that simply including the Agreement with other new hire paperwork is not procedurally unconscionable.

d.     *Conclusion*

Overall, plaintiff has only demonstrated that the Agreement has a slight degree of procedural unconscionability. Because "the procedural unconscionability of the agreement [is] minimal; the agreement therefore must reflect a high degree of substantive unconscionability for the agreement to be unenforceable." *Anderson v. Safe Streets USA LLC*, No. 2:18-cv-00323-KJM, 2018 WL 4106135, at *9 (E.D. Cal. Aug. 29, 2018) (citing *Poublon*, 846 F.3d 1251 at 1263).

2.     Whether the Agreement is Substantively Unconscionable

Plaintiff argues that the Agreement is substantively unconscionable because it: (1) provides an exception to arbitration for claims likely to be brought by defendant; (2) deprives plaintiff of rebuttable presumptions that she is entitled to under California law; (3) includes a waiver of Berman rights and fails to provide plaintiff with an accessible and affordable procedure for dispute resolution; and (4) bars plaintiff from pursuing a representative Private Attorneys General Act ("PAGA") action in the event the Agreement is declared unenforceable. (Doc. No. 8 at 8–9.)

"The substantive element of unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided." *Carbajal v.*

13

*CWPSC, Inc.*, 245 Cal. App. 4th 227, 247 (2016) (citations and internal quotation marks omitted). California courts have applied various tests to determine whether an agreement is substantively unconscionable. These include inquiring whether the terms are "overly harsh," "unduly oppressive," or "so one-sided as to shock the conscience." *See Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1145 (2013) (collecting cases). The California Supreme Court recently clarified, however, that "these formulations, used throughout our case law, all mean the same thing:" an agreement is substantively unconscionable where its enforcement would work "a substantial degree of unfairness beyond a simple old-fashioned bad bargain." *Sanchez*, 61 Cal. 4th at 911; *see also Serpa*, 215 Cal. App. 4th at 703 (noting that substantive unconscionability may exist where "contractual provisions reallocate risks in an objectively unreasonable or unexpected manner").

Thus, "[m]utuality is the 'paramount' consideration when assessing substantive unconscionability." *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 997 (9th Cir. 2012) (quoting *Abramson v. Juniper Networks, Inc.*, 115 Cal. App. 4th 638, 657 (2004)). In the employment context, substantive unconscionability can be found "when the arbitration agreement is one-sided in favor of the employer without sufficient justification, for example, when the employee's claims against the employer, but not the employer's claims against the employee, are subject to arbitration." *Serafin v. Balco Props. Ltd.*, 235 Cal. App. 4th 165, 177–78 (2015) (citations and internal quotation marks omitted).

1.      *Exceptions for Claims Likely to Be Brought by Defendant*

Plaintiff argues that the Agreement requires plaintiff to arbitrate "all of her employment-related claims" even as it "specifically carves out from arbitration the claims that Defendant is most likely to pursue against Plaintiff," such as claims for "injunctive or other equitable relief, including without limitation claims for unfair competition and the use or unauthorized disclosure of trade secrets or confidential information . . .." (Doc. No. 8 at 21; 5-2, Ex. A at § 3(b).)

In *Armendariz*, the California Supreme Court found that a unilateral obligation may be so one-sided in favor of the employer that it is substantively unconscionable. 24 Cal. 4th at 117–18. In such cases, to mitigate unconscionability, there must be "at least some reasonable justification

14

for such one-sidedness based on 'business realities.'" *Id.* That justification must be explained in the contract or established factually. *Fitz v. NCR Corp.*, 118 Cal. App. 4th 702, 723 (2004) (citing *Armendariz*, 24 Cal. 4th at 117). For instance, the Court held in *Sanchez* that a one-sided provision that allowed a car seller additional review of arbitral grants of injunctive relief was not unconscionable because "the potentially far-reaching nature of an injunctive relief remedy" on the car seller's business justified the "margin of safety" provided by the provision. 61 Cal. 4th at 917 (citing *Armendariz*, 24 Cal. 4th at 117). Courts must also keep in mind, as the Ninth Circuit made clear, that it should not be assumed that arbitration is an inferior forum to courts or that one-sided contracts are necessarily unconscionable. *Tompkins v. 23andMe,* 840 F.3d 1016, 1030–31 (9th Cir. 2016).

Turning to the Agreement, the court notes that there is at least some one-sidedness because it covers "[c]laims for unpaid wages, wrongful termination, employment discrimination and the like[, which] invariably are brought by employees, while claims involving trade secrets, misuse or disclosure of confidential information, and unfair competition [are carved out and are] typically . . . asserted only by employers." *Martinez v. Master Prot. Corp.*, 118 Cal. App. 4th 107, 115 (2004). "While a contract can provide a margin of safety that provides the party with superior bargaining strength a type of extra protection for which it has a legitimate commercial need without being unconscionable," *Farrar v. Direct Commerce, Inc.*, 9 Cal. App. 5th 1257, 1272–73 (2017) (internal quotation marks and citations omitted), *review denied* (June 14, 2017), several courts have rejected complete carve-outs for injunctive and equitable relief and confidentiality-related claims as unconscionable. *See, e.g.*, *id.* at 1273 (rejecting a wholesale exception for confidentiality-related claims); *Fitz*, 118 Cal. App. 4th 725–26 (finding exceptions for "trade secret, noncompetition and intellectual property disputes" unconscionably one-sided); *Chun Ping Turng v. Guaranteed Rate, Inc.*, 371 F. Supp. 3d 610, 628–29 (N.D. Cal. 2019) (collecting cases) (finding wholesale exemptions for intellectual property claims and claims for injunctive or equitable relief substantively to be unconscionable).

/////

/////

15

Moreover, other than a brief conclusory assertion that the "limited carve out is geared toward protecting Defendant's legitimate interests" (Doc. No. 9 at 18), defendant has provided no justification for the one-sidedness of this provision in this case.[6]  Therefore, the court concludes that § 3(b) of the Agreement, a one-sided exemption in favor of defendant, is substantively unconscionable.  *See, e.g.*, *Martin v. Ricoh Americas Corp.*, No. C-08-4853 EMC, 2009 WL 1578716, at *4 (N.D. Cal. June 4, 2009) (finding a one-sided provision unconscionable in part because "there is no evidence indicating that there are business realities that create a special need for [defendant] to have the advantage of obtaining injunctive relief in court to enjoin the disclosure of trade secrets or confidential information"); *Martinez*, 118 Cal. App. 4th at 115 (concluding that a one-sided term is unconscionable particularly when "the employer has not even advanced any business justification for the lack of mutuality").

### 2.   *Rebuttable Presumptions and Burdens of Proof*

Section 1(b) of the Agreement provides that "[t]he burden of proof at arbitration shall at all times be on the party seeking relief."  According to plaintiff, this is unconscionable because it prohibits her "from utilizing the protections of rebuttable presumptions afforded by California law" and shifts the burden of proof, in all cases, to plaintiff, even for demurrers and motions for summary judgment brought by defendant.  (Doc. No. 8 at 23–24.)

The court declines to read § 1(b) of the Agreement in the broad and unrestrained way suggested by plaintiff.  Rather, the provision must be read in context, and the Agreement as a whole.  *See, e.g.*, Cal. Civ. Code §§ 1641 ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other.") and 3541 ("An interpretation which gives effect is preferred to one which makes void."); *S. Pac. Land Co. v. Westlake Farms, Inc.*, 188 Cal. App. 3d 807, 822 (1987) ("[T]he court will, if possible, harmonize the parts and construe the instrument in such way that all parts may stand and

---

[6]  Although the court notes that plaintiff is not required to arbitrate certain benefits claims and worker compensation and unemployment benefits, this is immaterial.  *See Mercuro v. Superior Court*, 96 Cal. App. 4th 167, 176 (2002) (noting that workers' compensation and unemployment benefits are covered by their own adjudicatory systems and are not properly subject to arbitration and that benefit and pension claims are exempt only if they are covered by some other arbitration agreement).

16

will not strike down any portion unless there is an irreconcilable conflict wherein one part of the instrument destroys in effect another part.").  Read in this way, § 1(c) of the Agreement, which provides that "the arbitrator shall apply the governing substantive law applicable to the claims, causes of action and defenses asserted by the parties as applicable in the State of California," makes clear that § 1(b) does no more than restate the "ordinary default rule that plaintiffs bear the risk of failing to prove their claims," notwithstanding any rebuttable presumptions created by law. *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 56 (2005).

Accordingly, the court finds plaintiff's argument that § 1(b) of the Agreement is unconscionable to be unpersuasive.

### 3.    *Waiver of Berman Rights*

Plaintiff argues that the Agreement, which covers "any claim that could be asserted . . . before an administrative agency for which the employee has alleged a cause of action," is substantively unconscionable because it forces her to waive her right to an administrative Berman hearing without giving her any equivalent protections.  (Doc. No. 8 at 25; 5-2, Ex. A at § 2(b).)

California law is clear that a Berman waiver may be grounds for a finding of unconscionability.  *See OTO*, 8 Cal. 5th at 131 ("It is important to stress that the waiver of Berman procedures does not, in itself, render an arbitration agreement unconscionable.  However, a substantive unconscionability analysis is sensitive to 'the context of the rights and remedies that otherwise would have been available to the parties.'"); *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1146 (2013) [hereinafter *Sonic II*] ("Waiver of these protections does not necessarily render an arbitration agreement unenforceable, nor does it render an arbitration agreement unconscionable per se.  But waiver of these protections in the context of an agreement that does not provide an employee with an accessible and affordable arbitral forum for resolving wage disputes may support a finding of unconscionability.").

For a Berman waiver to be valid, "the agreement must provide *in exchange* an accessible and affordable forum for resolving wage disputes."  *OTO*, 8 Cal. 5th at 133.  Plaintiff argues that the Agreement:  1) "does not mention how to bring a dispute to arbitration, nor does it suggest where that information might be found;" 2) increases costs and prolongs the dispute process by

requiring employees to provide written notice of their claims and to confirm an award in court; and 3) requires plaintiff to respond to costly and potentially confusing discovery and legal motions. (Doc. No. 8 at 26.)

Defendant counters, arguing that the Agreement "identifies the AAA as the arbitration provider and specifically tells the employee how to initiate arbitration proceedings." (Doc. No. 9 at 17.) While the former is true, the latter is a mischaracterization of the Agreement; the section cited by defendant merely directs employees to give written notice to defendant should they wish to arbitrate. (Doc. No. 5-2, Ex. A, § 5(a).) Nevertheless, this is not dispositive, since plaintiff could have contacted the AAA or gone to its website to download a standardized form to begin the arbitration process. *See OTO*, 8 Cal. 5th at 130–31 (noting that employees can contact the listed arbitration provider for information on claim initiation and that providers often provide standardized forms to start the process).

Defendant also points out that it would be responsible for paying the arbitrator's fees and other costs assessed by the AAA. (Doc. No. 9 at 17; Doc. No. 5-2, Ex. A at § 5(c).) While this mitigates some of the extra costs imposed by arbitration relative to a Berman proceeding, the latter still has many advantages for employees. *See, e.g.*, *OTO*, 8 Cal. 5th at 133 (describing the Berman process as "an expedient, largely cost-free administrative procedure"); *Sonic II*, 57 Cal. 4th at 1146 ("The Berman statutes include various features designed to lower the costs and risks for employees in pursuing wage claims, including procedural informality, assistance of a translator, use of an expert adjudicator who is authorized to help the parties by questioning witnesses and explaining issues and terms, and provisions on fee shifting, mandatory undertaking, and assistance of the Labor Commissioner as counsel to help employees defend and enforce any award on appeal.").[7]

However, the California Supreme Court has also explained that "[n]o specific procedures are required" in lieu of a Berman hearing. *OTO*, 8 Cal. 5th at 133. While plaintiff's concerns

---

[7] In juxtaposition, plaintiff identifies three disadvantages that she would suffer should to arbitration be compelled in this case —the court addresses each below. (*See* Doc. No. 8 at 25–26.)

regarding arbitration (namely, the requirement for written notice, the need to enforce an award in the courts, and the complexity of arbitral discovery and motions practice) are of some merit, they are not unique to arbitration. Indeed, plaintiff has retained counsel and opted to attempt to litigate this case in the courts, thereby exposing her to the costs that she claims to want to avoid.[8] *See OTO*, 8 Cal. 5th at 136 ("Because the arbitration process here is no more complicated than ordinary civil litigation, it might be sufficiently accessible for wage claimants who are sophisticated, or affordable for those able to hire counsel.").

Therefore, the court finds that the Agreement's Berman waiver is not unconscionable.

### 4. *Waiver of Representative PAGA Claims*

Plaintiff contends that the Agreement is substantively unconscionable because it forces her to waive her right to bring a representative action under PAGA in the event that the Agreement is declared unenforceable. (*See* Doc. No. 5-2, Ex. A at § 7(e).) Defendant concedes, as it must, that representative PAGA waivers are unenforceable as against public policy,[9] *see Iskanian v. CLS Transportation Los Angeles, LLC*, 59 Cal. 4th 348, 384 (2014), but argues that: 1) an unlawful PAGA waiver has no effect on unconscionability analysis when plaintiff has not alleged any PAGA claims; and 2) the unenforceability of a PAGA waiver does not mean it is unconscionable.

The undersigned acknowledges that some, including judges in the Eastern District, have concluded that a plaintiff who has not asserted PAGA claims cannot argue that a PAGA waiver is unconscionable. *See, e.g.*, *Shoals v. Owens & Minor Distribution, Inc.*, No. 2:18-cv-2355-WBS-EFB, 2018 WL 5761764, at *7 (E.D. Cal. Oct. 31, 2018) (noting that the plaintiff had not alleged

---

[8]  After all, litigation too requires a party to give notice to the other party, seek enforcement of relief if the losing party refuses to comply, and to conduct discovery and motions practice.

[9]  The court notes that the Agreement specifically states that it does not apply to representative PAGA actions. (*See* Doc. No. 5-2 at § 3(e)) (excluding non-arbitrable representative PAGA claims from the scope of the Agreement). It would thus be somewhat incongruent to construe a waiver that comes into force only if the Agreement is declared unenforceable as nevertheless applying to subject matter that is expressly excluded by the Agreement. (*Id.* at § 7(e).) Nonetheless, defendant does not dispute plaintiff's characterization of the provision as a PAGA waiver.

any PAGA claims, and thus cannot claim substantive unconscionability on the basis of a PAGA waiver). Absent binding precedent, the court declines to adopt that reasoning, as the very presence of a representative PAGA waiver may deter litigants from even trying to bring a claim in the first place, thereby undermining state law and public policy. *See Iskanian*, 59 Cal. 4th at 384 ("[T]he waiver of representative claims under the PAGA is contrary to public policy and unenforceable as a matter of state law.").

However, case law is clear that "the unenforceability of the waiver of a PAGA representative action does not make this provision substantively unconscionable." *Poublon*, 846 F.3d at 1264; *see also Sonic-Calabasas A, Inc. v. Moreno*, 51 Cal. 4th 659, 686, *cert. granted, judgment vacated on other grounds,* 565 U.S. 973 (2011) ("Contracts can be contrary to public policy but not unconscionable and vice versa.") (citations omitted). Although plaintiff has shown that representative PAGA waivers are unenforceable, she has not provided a rationale as to why it is unconscionable, especially because plaintiff has not even brought any PAGA claims.

Accordingly, § 7(e) of the Agreement will be severed as unenforceable.

## C.     Severability

Plaintiff contends that the Agreement is so permeated with unconscionability that it is unenforceable in its entirety. (Doc. No. 8 at 28–29.) Defendant counters, arguing that any unconscionable provision should be severed rather than striking down the entire Agreement. (Doc. No. 9 at 18–19.)

There is a "strong legislative and judicial preference [for severing] offending term[s] and enforce[ing] the balance of the agreement." *Dotson v. Amgen, Inc.*, 181 Cal. App. 4th 975, 986 (2010); *see also* Cal. Civ. Code §§ 1670.5(a) ("If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may . . . enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.") and 1599 ("Where a contract has several distinct objects, of which one at least is lawful, and one at least is unlawful, in whole or in part, the contract is void as to the latter and valid as to the rest."). California courts, in particular, "take a very liberal view of severability, enforcing valid parts of

an apparently indivisible contract where the interests of justice or the policy of the law would be furthered." *Koenig v. Warner Unified Sch. Dist.*, 41 Cal. App. 5th 43, 56 (2019) (citation omitted).

Here, the court has found minimal procedural unconscionability and only a single substantively unconscionable term—§ 3(b), the one-sided exception for claims likely to be brought by defendant. That single objectionable term is not enough for the court to condemn the entire Agreement. Thus, § 3(b) will be severed from the Agreement as unconscionable and § 7(e) will be severed as unenforceable and against public policy. The rest of the Agreement is valid and enforceable.

## CONCLUSION

Accordingly:

1. Defendant's motion to compel arbitration (Doc. No. 5.) is granted;

2. Section 3(b) of the Arbitration Agreement is severed as unconscionable;

3. Section 7(e) of the Arbitration Agreement is severed as unenforceable and against public policy;

4. This case is dismissed without prejudice; and

5. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated: __**December 30, 2019**__     _____

UNITED STATES DISTRICT JUDGE